IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFFREY A. RICHARDS, #286446          *
        Plaintiff,
     v.                               *          CIVIL ACTION NO. WDQ-14-2387

STACY M. CROSS, *et al*.              *
        Defendants.
                     *****

### MEMORANDUM

I. Procedural History

On July 25, 2014, Jeffrey A. Richards, formerly housed at the Metropolitan Transition Center in Baltimore, Maryland, filed this 42 U.S.C. § 1983 lawsuit against Stacy Cross, a certified nurse practitioner, and a private mental health care service company, Mental Health Management ("MHM"), complaining that in June of 2012, Cross failed to check the therapeutic level of his lithium prescription as instructed by a physician, causing him to suffer side effects. ECF No. 1.

Defendants Cross and MHM Services, Inc. have filed a court-ordered Motion for Summary judgment, which remains unopposed as of the within signature date.   ECF No. 22.   The case may be determined without oral argument.   *See* Local Rule 105.6. (D. Md. 2014).   For the following reasons, Defendants' motion will be granted.

II.    Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment." Id. "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.' " *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 522 (4th Cir.2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. *Scott* 550 U.S. at 378 (citation omitted); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore,* 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted). At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat,* 346 F.3d at 526 (citation and internal quotation marks omitted).

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson* 551 U.S. at 94; *Cruz v. Beto,* 405 U.S. 319 (1972). The requirement of liberal construction does not mean the court can ignore a clear failure in the pleadings to allege facts which set forth a claim, *see Weller v. Department of Social Services,* 901 F.2d 387, 391 (4th Cir. 1990), or assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

III. Analysis

Defendant Cross asserts that plaintiff had been diagnosed with bipolar disorder and a history of opioid abuse and arthritis, following examination by other health care professionals, and prescribed Neurontin[1] to manage his lower leg arthritis pain and his mood swings. ECF No. 22-1 &

---

[1]    Neurontin (gabapentin) is an anti-epileptic medication, also called an anticonvulsant. It affects chemicals and nerves in the body that are involved in the cause of seizures and some types of pain. *See* http://www.drugs.com/neurontin.html.

22-2. Cross states that after these diagnoses, she saw plaintiff prior to his filing of this case for

purposes of evaluating and adjusting his medication. *Id.* She asserts that when she consulted with

plaintiff in January of 2012, he indicated that he was not taking any psychotropic medications and

claimed that prior regimens with psychotropic drugs had been ineffective.   Plaintiff believed that

Neurontin was effective in managing his mood swings.   Cross alleges that plaintiff was not

exhibiting any signs of psychosis, mania, suicidal or homicidal ideation.  She discussed the risks and

potential benefits of psychotropic medication with plaintiff, referred him for a psychological

consultation, and suggested a follow-up appointment in three months.  ECF No. 22-1.

Cross next saw plaintiff on April 6, 2012, for medication management.  He complained of

depression, mood swings, insomnia, fatigue, and loss of appetite at that time and reported that he had

taken Nortriptyline and Lithium in the past with good results.  Plaintiff requested to be placed back

on the medication.   Cross prescribed 50 milligrams of Nortriptyline[2] and 300 milligrams of

Lithotabs[3] to address plaintiff's stated symptoms.   She claims that she discussed the potential risks

and benefits of the medications and cautioned plaintiff to report any adverse side effect.  ECF No.

22-1 & 22-2.

---

[2]      Nortriptyline is used to treat mental/mood problems such as depression. It may help improve
mood and feelings of well-being, relieve anxiety and tension, and increase your energy level. This medication
belongs to a class of medications called tricyclic antidepressants. It works by affecting the balance of certain
natural chemicals (neurotransmitters) in the brain.   *See*  http://www.webmd.com/drugs/2/drug-10710/nortriptyline-oral/details.

[3]      Lithotabs or lithium carbonate is a medication used to treat manic-depressive disorder (bipolar
disorder). It works to stabilize the mood and reduce extremes in behavior by restoring the balance of certain
natural substances (neurotransmitters) in the brain.   *See*  http://www.webmd.com/drugs/2/drug-9291/lithotabs+oral/details.

Plaintiff was next seen by Dr. Susan Bailey on May 8, 2012, for medication management. He reported that he was doing better since taking the medications. He was seen by Cross on June 6, 2012, when he complained of mood swings and occasional depression. He stated that the Nortriptyline was only working minimally and his dosage was increased to 100 milligrams. Defendants state that blood levels drawn in June of 2012, indicated that plaintiff's thyroid and kidney functions were normal and that there was no sign of Lithium toxicity.[4] ECF No. 22-1 & 22-2.

Cross saw plaintiff in August of 2014, as a fill-in health care provider. Plaintiff reported that his medications were working well and that his mood was stable. He denied any side effects or adverse reactions. Cross ordered a Lithium level, thyroid panel, a comprehensive metabolic panel, and a complete blood count. ECF No. 22-1. The Medical Management notations from December 24, 2014, observed that plaintiff's Lithium level was within normal limits. ECF No. 22-2.

With regard to the claims raised against defendants, the Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Deliberate indifference to a serious medical need

---

[4]        In September of 2013, Plaintiff's Lithium level was found to be within normal limits. ECF No. 22-2.

4

requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious.[5] *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter…becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844.  If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2001); citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not

---

[5]        A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241, citing to *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999).

those that could have been taken).  Inmates do not have a constitutional right to the treatment of their choice, *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986), and disagreements between medical staff and an inmate over the necessity for or extent of medical treatment do not rise to a constitutional injury. *See Estelle*, 429 U.S. at 105-06; *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Fleming v. LeFevere*, 423 F.Supp.2d 1064, 1070-71 (C.D. Cal. 2006).

IV. Conclusion

The unopposed records plainly show that medical personnel did not disregard plaintiff's medical needs.  He requested treatment for his depression and mood swings, was advised of the risks and benefits of the drugs to be used, and was then prescribed Lithium and Nortriptyline. Defendants repeatedly ordered blood lab checks of his lithium levels as well as his kidney and thyroid functions.  All results were within normal limits and plaintiff reported no adverse side effects or reactions. Defendants were not inattentive to his needs.  No Eighth Amendment violation has been demonstrated.  The Defendants' motion for summary judgment will be granted.

Date: _9/30/1)_

_____
William D. Quarles, Jr.
United States District Court Judge

6